In re William Leo SHIELDS, Jr. a/k/a
William L. Shields, Debtor.

Donald I. MACAULAY and Coral
L. Macaulay, Plaintiffs,

v.

William L. SHIELDS, Defendant.

Bankruptcy No. 92–11255.
Adv. No. 92–1354.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 30, 1992.

Robert B. Fredericks, Falmouth, Mass.,
for plaintiffs.

Michele Hilton, Barnstable, Mass., for defendant/debtor.

## MEMORANDUM

JAMES A. GOODMAN, Chief Judge.

### I. INTRODUCTION

The matter before the Court is the motion for summary judgment filed by the William L. Shields, Jr. (the "Debtor") with respect to a complaint to determine the dischargeability of a debt filed by Donald and Coral Macaulay (the "Plaintiffs"). The Court conducted a hearing on October 9, 1992 and took the motion under advisement.

### II. FACTS

The Debtor filed a voluntary petition under Chapter 7 on February 10, 1992. The Plaintiffs commenced the above-captioned adversary proceeding on June 1, 1992. The Plaintiffs seek a determination that a judgment in the amount of $46,000 that they received from the Barnstable Superior Court is nondischargeable pursuant to 11 U.S.C. § 523(a)(2). The Plaintiffs incorporated the Memorandum of Opinion issued by Judge John Paul Sullivan of the Barnstable Superior Court in their nondischargeability complaint. A summary of the Superior Court's findings of fact and conclusions of law follow.

The plaintiffs entered into a purchase and sale agreement with Park Beach Ocean Resort, Inc. ("Park Beach") on July 11, 1988 to buy time share intervals in Units 103 and 104 at the Park Beach Ocean Resort (the "Resort") in Falmouth, Massachusetts. The Resort, formerly a motel, had been converted to a time-share condominium in August of 1987 under G.L. c. 183B. The Plaintiffs made full payment for the intervals they purchased in August of 1988.

The cost of the two units was $17,250. Receipt of payment was acknowledged by Park Beach. The Plaintiffs have never received a time-share deed for the two units they purchased and no such instrument has been recorded at the Barnstable County Registry of Deeds.

Prior to the Plaintiffs involvement, the Resort property was owned by the Park Beach Trust. Robert Shields, a relative of the Debtor, was a trustee of the Trust. At the time the Plaintiffs purchased their units he was president of Park Beach. The Trust conveyed the property to Park Beach in May of 1988. The Park Beach property was encumbered by a first mortgage that matured in November of 1987. Robert Shields obtained an extension of time to pay the first mortgage from the mortgagee, Berkshire County Savings Bank (the "Bank"). The Bank agreed to an extension to August of 1988 and then to November 15, 1988. During the extension period, the Bank was under no obligation to grant releases of any condominium units secured by the mortgage. No payments were made after November 1988 and the Bank commenced foreclosure proceedings. An order of notice against the property was on record on April 5, 1989 when First Barnstable Corporation ("First Barnstable") purchased the Resort and assumed the Bank's mortgage.

William Shields was an officer and director of First Barnstable and a cousin of Robert Shields. He held himself out as the new owner and developer of the Resort.

On April 25, 1989 and again on June 6, 1989, the Plaintiffs sent 93A demand letters to the Resort demanding the return of the purchase price for failure to deliver time-share deeds. They did not receive any written responses within the statutory 30–day period.

The Plaintiffs visited the Resort in July of 1989 and met with William Shields, who promised to send them a deed. William Shields failed to inform the Plaintiffs of the foreclosure proceedings and the Bank's refusal to permit releases. Indeed on July 20, 1989, William Shields notified the Plaintiffs that deeds would be forwarded to them by October 30, 1989. The Bank's foreclosure sale was scheduled for September 8, 1989.

On September 7, 1989, First Barnstable filed a petition under Chapter 11 of the Bankruptcy Code. The Bank ultimately obtained relief from the automatic stay and proceeded with the sale of the Resort property. The Plaintiffs were never sent a time-share deed.

The Superior Court found that the July 20, 1989 letter was sent in bad faith in view of William Shields' awareness of 1) the inability of First Barnstable or its predecessors to sell time-share paper; 2) the Bank's loan extension agreement precluded issuance of partial releases; and 3) a large portion of the consumer end paper was neither notarized nor witnessed. The Superior Court then stated the following:

The Real Estate Time–Share Act, G.L. c. 183B, § 51(b) requires the developer to record evidence of a purchaser's ownership of the time-share within five (5) days of the performance of the terms of the agreement by the purchaser. Defendant Shields acted as "developer" of the time-share resort within the meaning of c. 183B and held himself out as manager and owner....

\* \* \* \* \* \*

Defendant Shields ratified and undertook for himself and First Barnstable Corporation the contractual obligations of predecessor owner and seller, Park Beach Ocean Resort, Inc. to the plaintiff [sic]. Shields' failure to discharge his obligation to record a time-share deed after full performance by the Macaulays was an unfair an [sic] deceptive act and practice (c. 183B, § 51, 49). Shields' promise to promptly deliver a time-share deed for the Macaulays without agreement or likelihood for delivery of a partial release of the existing mortgage then being foreclosed was an unfair and deceptive act and practice under c. 93A. Shields breached the sales agreement which required return of the Macaulays purchase price ($17,250) if deed was not delivered within 180 days. Defendant's failure to provide written response to

plaintiffs' 93A demand letters within thirty (30) days was a violation of c. 93A.

\* \* \* \* \* \*

Shields is not immunized, as an officer of First Barnstable Corporation, for the breaches of duties under the Time–Share Act and the Consumer Protection Statute with breaches of duties under the Time–Share Act and the Consumer Protection Statute with respect to the plaintiffs and is personally liable. A corporate officer is liable for torts in which he personally participated whether or not he was acting within the scope of his authority.

Accordingly, the state court judge entered judgment in favor of Plaintiffs, doubling the Plaintiffs' actual damages of $17,250 and awarding them attorney's fees in the amount of $11,500.

## III. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall enter if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. The Debtor says there are no material facts in dispute and that he is entitled to judgment as a matter of law. The Court agrees.

■ Section 523(a)(2)(A) of the Bankruptcy Code provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) *for money,* property, services, or an extension, renewal, or refinancing of credit, to the extent *obtained by*—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A) (emphasis supplied). In *Commerce Bank & Trust Company v. Burgess (In re Burgess),* 955 F.2d 134 (1st Cir.1992), the Court of Appeals for the First Circuit stated that under this section the plaintiff must prove "(1) the debtor obtained property by means of a knowingly false representation or one made in reckless disregard of its truthfulness; (2) the debtor intended to deceive the creditor; (3) the creditor actually relied on the misrepresentation; and (4) the creditor's reliance was reasonable in the circumstances." *Id.* at 139. *See also In re Jackson,* 89 B.R. 308, 312 (Bankr.D.Mass.1988).

The issue before the Court is whether the Barnstable Superior Court 93A judgment constitutes fraud for purposes of section 523(a)(2)(A) of the Bankruptcy Code. The Debtor maintains that, not only did the misrepresentations which the Barnstable Superior Court found violated 93A not rise to the level of fraud required by section 523(a)(2)(A), there was no causal connection between the misrepresentations and the damages suffered by the Plaintiffs. Specifically, the Debtor argues that 1) he did not obtain the Plaintiffs' money by fraud; 2) he made no fraudulent misrepresentations to the Plaintiffs that were relied upon them at the time they purchased the timeshare units; and 3) misconduct under 93A does not necessarily impute nondischargeability.

The Plaintiffs maintain that numerous genuine issues of material fact exist with respect "to the determination of common law fraud (deceit) in the promotion and sale of timeshares by Shields at the Park Beach Resort in Falmouth, Massachusetts, during the Summer of 1989 and more specifically as to the nature of representations made to plaintiffs regarding the recording of their (and others) timeshare deeds as respects an impending foreclosure of the Resort by the lenders." The Plaintiffs also argue that there are factual issues related to the extent of the Debtor's knowledge and state of mind in the Spring and Summer of 1989 and at the time he represented to the Plaintiffs that he would "honor his predecessors promises to record timeshare deeds."

■ The Plaintiffs' arguments miss the point. Section 523(a)(2)(A) requires a showing that the individual debtor *obtained money* from the plaintiffs. There is no such showing. Clearly, the Debtor's conduct cannot be condoned. This Court has no doubt that the Superior Court's findings

were amply supported by the record in the state court proceeding. However, the fatal flaw in the Plaintiffs' argument is that the Plaintiffs bought their time-share in July of 1988, approximately eight months prior to First Barnstable's acquisition of the Resort property. The undisputed facts are that the Debtor made no misrepresentations that induced the Plaintiffs to part with $17,250 to acquire two units at the Park Beach Resort. The representations that he made in bad faith were calculated to placate the Plaintiffs and restrain them from taking actions that might jeopardize First Barnstable's relationship with the Bank. They did not cause the damages the Plaintiffs sustained. Accordingly, the Court finds that the Plaintiffs cannot establish a critical element of proof under section 523, namely *obtaining money* by means of false representations.

In consideration of the foregoing, the Court hereby allows the Debtor's motion for summary judgment. The foregoing shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.